51 CCPA

Application of Alan J. LEMIN, Arnolds Steinhards and Gerald A. Boyack.

Patent Appeal No. 7083.

United States Court of Customs and Patent Appeals.

Jan. 23, 1964.

George T. Johannesen, The Upjohn Co., Kalamazoo, Mich. (Eugene O. Retter, Washington, D. C., of counsel), for appellants.

Clarence W. Moore, Washington, D. C. (Joseph F. Nakamura, Washington, D. C., of counsel), for the Commissioner of Patents.

Before WORLEY, Chief Judge, and RICH, MARTIN, SMITH, and ALMOND, Judges.

ALMOND, Judge.

This is an appeal from a decision by the Board of Appeals affirming the final rejection of appellants' patent application.[1] The invention relates to promoting the growth of plants by stimulating the plants as well as protecting them from damage by parasites such as fungi and bacteria. The active compound employed is N-lower-alkanoylsulfanilic acid hydrazide. The claims drawn to a method of treating plants have been allowed, as well as a compound claim and two claims drawn to a dry composition of the active compound and a soluble salt. The rejected claims are all drawn to a composition of matter. Each of the rejected claims, except claim 22 recites three ingredients: an N-lower-alkanoylsulfanilic acid hydrazide, a carrier, and a surfactant.

The issue is whether the claimed compositions are obvious in view of the prior art.

Claim 10 is representative and reads:

"10. A composition suitable for promoting growth of plants and for protecting them from damage by parasitic plant pathogens which comprises a parasitic plant pathogen inhibiting and plant growth promoting amount of a N-lower-alkanoylsulfanilic acid hydrazide having the formula

wherein R is selected from the group consisting of hydrogen and an alkyl radical containing from 1 to 4 carbon atoms, a carrier, and a surfactant capable of reducing the surface tension of water to less than about 40 dynes per centimeter in concen-

---

1. Serial No. 726,621, filed April 7, 1958, for "Compositions of Matter and Method."

trations of less than about 1 per cent."

Claim 22 reads:

"22. A composition of matter suitable for promoting growth of plants and for protecting them from damage by parasitic pathogens which comprises a parasitic plant pathogen inhibiting and plant growth promoting amount of an N-lower-alkanoylsulfanilic acid hydrazide having the formula

wherein R is selected from the group consisting of hydrogen and an alkyl radical containing from 1 to 4 carbon atoms, inclusive, dispersed in an inert pulverulent solid having a particle size less than 50 microns."

The specification states that the hydrazides "are effective for stimulating growth of plants and for the control of parasitic pathogens that infect plants. These hydrazides have both systemic and topical action. Systemically they promote the growth of plants independently of whether the plants are infected or not. These compounds can be applied to foliage, roots, seeds, or other parts of the plant."

The references relied on below are:

Rothmann (German Patent)     901,650               January 14, 1954
Curtius et al., "Journal für Praktische Chemie," December 1926, Vol. 112, pages 117–137.
Biniecki et al., Chemical Abstracts, 1955, Vol. 49, Co. 8168(h).

---

The Board of Appeals was of the opinion that the Curtius et al. and Biniecki et al. references "are cumulative to Rothmann who discloses the compounds in various media and also teaches the therapeutic use thereof."

The Rothmann reference discusses an improvement of the compounds of Curtius et al. which latter compounds were used to treat animals infected with pneumococci. The improvement of Rothmann consists of making hydrazides which are within the scope of the hydrazides recited in the instant claims. The compounds are said to be "hardly soluble in ethanol and benzene" and "almost insoluble in benzene, and more easily soluble in acetone" in examples of Rothmann. Various alternatives are suggested "to increase the solubility of the final product."

The Board of Appeals found the claimed compositions obvious in view of Rothmann. The board said:

" * * * However, it is known in the art without need of citations of authority therefor that therapeutics are usually dispensed and utilized in either liquid or solid media. In re Rosicky, 47 CCPA 859; 1960 C.D. 197; 755 O.G. 929; 276 F. (2d) 656; 125 USPQ 341. Thus, the Examiner's rejection of claim 22, which requires a single additional component, an inert solid, is made obvious by the teaching of the therapeutic use of the compounds in Rothman[n]. (See also In re Craige Jr., 38 CCPA 1114; 1951 C.D. 433; 650 O.G. 324; 189 F.(2d) 620; 90 USPQ 33.)

"We wish to note at this point that the claims read upon compositions containing the listed components regardless of the ultimate use thereof. Limitation in the preambles of the claims to an intended use in the 'suitable for — —' terms may not be relied upon to support patentability over such compositions disclosed or suggested in the prior art. In re Hack, 44 CCPA 954;

1957 C.D. 334; 721 O.G. 422; 245 F. (2d) 246; 114 USPQ 161."

Appellants contend that the Rosicky case is distinguishable because no particular carrier was there recited nor was any particular combination of ingredients claimed for a specific purpose. They argue:

" * * * Nothing appears in the art and nothing is found in In re Rosicky indicating that the combinations of these claims would have been obvious to one skilled in the art at the time the invention was made as there is nothing in the art 'to suggest the desirability of the * * * combination.' In re Bergel et al. [292 F.2d 955] 48 CCPA 1102, 130 USPQ 206."

As to claim 22, appellants state that the active ingredient is *dispersed* in a *pulverulent* solid of *limited particle size* and thereby differs from "solid media" said to be obvious in Rosicky.

Claim 23 is drawn to the active ingredient in a mixture of pulverulent solid and a surfactant. Appellants contend that there is no suggestion of the desirability of the mixture.

As to the surfactant, appellants do not deny that surfactants are used in therapeutic compositions, but they argue that this fact "is not relevant because the purpose of formulations and the type of their formulations are entirely different."

As to the preamble, appellants advance the position that the preamble is part of the subject matter as a whole and that "holding that the preamble in this particular situation may be disregarded is tantamount to disregarding *the subject matter as a whole* portion of Section 103."

The facts here are similar to those presented in the compositions claimed in In re Riden et al., 50 CCPA 1411, 318 F.2d 761. There the claims were drawn to a sulfone compound as active ingredient, a carrier and a surfactant. The prior art showed the same active ingredient as in the claimed composition in water, but no uses were disclosed in the reference report. Appellants in that case argued that "there must be a recognition that a compound can be utilized in a pesticidal composition before anyone would wish to add a surface active agent." This court rejected the argument, stating:

" * * * The other ingredient of the composition, the adjuvant, does not define a substance limited to the field of pesticides. Were it true that adding a surface active agent required 'recognition that a compound can be utilized in a pesticidal composition,' as argued by appellant, the composition might be unobvious. But surface active agents are used in a great number of fields of scientific endeavor. For example, even with no ultimate use in mind, a chemist could well employ a surface active agent to emulsify or disperse the slightly soluble sulfones of Boehme et al. * * * Surely an emulsion of a compound in water is not limited to use as a pesticide."

We were not persuaded in Riden et al. that the addition of a surfactant to a known compound in a liquid solvent dedicated the composition to exclusive use as a pesticide. Here we are not persuaded that the addition of a surfactant to a known compound in a liquid solvent dedicates the composition to exclusive use in plant growth promoting. The surfactant apparently performs its usual function of aiding dispersion of the sparingly soluble active ingredient. There is no evidence of any benefit obtained from the surfactant other than in dispersing. Since the Rothmann reference shows that the same active ingredient is only slightly soluble in a variety of liquid carriers, it would be obvious to employ a dispersing aid to broaden the use of the active ingredient in a diluted liquid form. This appears to be entirely consistent with the therapeutic uses intended by Rothmann. We agree with the statement of the board that it is "obvious to one having ordinary skill in the therapeutic art to em-

ploy, in the therapeutic compositions of Rothmann, surfactants for their usual functions in such compositions."

■ However, there is nothing in the record to indicate that the usual functions of surfactants ever encompass use in conjunction with an inert pulverulent solid. The Rothmann reference relates to liquid compositions used in therapeutic arts. Claim 23 recites "a mixture of an inert pulverulent solid and a surfactant." While it is obvious to employ a surfactant in liquid compositions such as those of Rothmann, it does not appear obvious from the record to combine an inert pulverulent solid *and* a surfactant with the Rothmann composition. We agree with appellants that nothing suggests "the combination in which the active ingredient is dispersed *in a mixture of the inert pulverulent solid and surfactant.*" We therefore must reverse as to claim 23.

Claim 22, like claim 23, recites an inert pulverulent solid, but differs in that the combination of a mixture of the solid with a surfactant is not claimed. Since inert pulverulent solid carriers are used in therapeutic arts, we will sustain the rejection based on Rothmann. The particle size of claim 22 does not appear to be distinctive since, as pointed out by the solicitor, drugs are often dispersed in solid carriers of fine particle size.

Appellants are clearly correct in demanding that the subject matter as a whole must be considered under 35 U.S.C. 103. But in applying the statutory test, the differences over the prior art must be more substantial than a statement of the intended use of an old composition. Counsel for appellants produced a bottle containing a composition at oral argument. It seems to us that the composition in the bottle would be exactly the same whether the user were told to cure pneumonia in animals with it (as in Rothmann) or to promote plant growth with it (as here). The directions on the label will not change the composition of the contents. We therefore fail to find any unobvious distinction in the claim phrase "suitable for promoting growth of plants and for protecting them from damage by parasitic pathogens."

The claim limitation "a parasitic plant pathogen inhibiting and plant growth promoting amount" could be a valid distinction, assuming the art knows what range of amounts is intended by the phrase, only if it differed from the amount that those having knowledge of the prior art here would employ for the prior art purpose. Here there is no indication that the plant protecting amount is any different from a therapeutic amount that one skilled in the art of Rothmann would select. It, therefore, does not appear that the amount limitation distinguishes the composition from that which would be obvious from the prior art.

■ Since the addition of a surfactant to enhance the solubility characteristics of a sparingly soluble compound in a liquid carrier would be obvious (In re Riden et al.), and the dispersing of a known therapeutic compound in a pulverulent solid is obvious (In re Rosicky), we affirm the rejection of claims 10 to 12 and 20 to 22. Since the record fails to show that it is obvious to combine a compound known only as a therapeutic with an inert pulverulent solid and a surfactant, we reverse the rejection of claim 23.

Modified.