### In re Lonnie T. SPADA and Joseph J. Wilczynski.

#### No. 90–1109.

United States Court of Appeals, Federal Circuit.

Aug. 10, 1990.

James H. Laughlin, Jr., Benoit, Smith & Laughlin, Arlington, Va., argued, for appellants. With him on the brief, was Michael H. Laird, Unocal Corp., Brea, Cal., of counsel.

Fred E. McKelvey, Sol., Office of the Sol., Arlington, Va., argued, for appellee. With him on the brief, was John H. Raubitschek, Associate Sol.

Before NEWMAN and MAYER, Circuit Judges, and BROWN, District Judge.[*]

PAULINE NEWMAN, Circuit Judge.

The decision of the United States Patent and Trademark Office (the PTO) Board of Patent Appeals and Interferences (the Board), rejecting claims 2 through 25 and 27 through 31, all the claims at issue of Spada and Wilczynski (hereinafter Spada) patent application Serial No. 859,057, filed May 2, 1986 and entitled "Pressure Sensitive Adhesives and Manufactured Articles", is affirmed.

### The Invention

The Spada invention is a pressure sensitive adhesive composition comprising a water-based latex containing a normally tacky copolymer made from specified classes and proportions of monomers and having a glass transition temperature $(T_g)$ [1] of 0°C or less. Claim 31 was treated by the parties as representative:

Claim 31. A pressure sensitive adhesive composition comprising a water-base latex comprising a continuous aqueous medium containing dispersed particles of a normally tacky polymer having a $T_g$ of about 0°C. or less and comprising at least about 60 weight percent olefinically unsaturated carboxylic acid ester monomers and at least about 0.1 weight percent of at least one polymerizable functional monomer of the formula:

$$R_6 - CH = \overset{\overset{\displaystyle R_5}{|}}{C} - R_1 - \overset{\overset{\displaystyle O}{\|}}{C} - CH_2 - X$$

in which $R_1$ is a divalent organic radical of at least 3 atoms in length, $R_5$ and $R_6$ are independently selected from hydrogen, hydroxy, halo, thio, amino or monovalent organic radicals, and X is $-CO-R_4$ or $-CN$ wherein $R_4$ is hydrogen or a monovalent organic radical.

The Spada disclosure broadly is coextensive with claim 31. While claim 31 requires that the polymers comprise members of two general classes of monomers, Spada's specific examples illustrate polymers in which members of three general classes of monomers are present.

The first class of monomer required by Spada is an olefinically unsaturated carboxylic acid ester that is present in at least about 60 weight percent of the polymer. Representative examples show 96.5 weight percent butyl acrylate (Example 2), and a combination of 48 weight percent butyl acrylate and 48 weight percent 2–ethylhexyl acrylate (Example 11).

Spada's second required class of monomer is a "polymerizable functional monomer" present in "at least about 0.1 weight percent" of the polymer (claim 31). The illustrative examples show 1–2 weight percent acetoacetoxyethyl methacrylate (AAEMA).

Spada's specification states that preferred polymer compositions include at least about 0.1 weight percent of a third

---

[*] Judge Garrett E. Brown, Jr., United States District Court for the District of New Jersey, sitting by designation.

[1]. Glass transition temperature $(T_g)$ is defined as the temperature (or temperature range) at which an amorphous polymer changes from a hard, rigid, glassy state to a soft, flexible, rubbery state. S. Rosen, *Fundamental Principles of Polymeric Materials* § 8.1 (1982).

class of monomer, an olefinically unsaturated carboxylic acid. Examples are 1.5 weight percent methacrylic acid (Example 2) and 3 weight percent acrylic acid (Example 7).

All of Spada's claims require that the $T_g$ of the claimed tacky polymers is about 0°C or less, and that the products are pressure-sensitive adhesives.

The claims were rejected as unpatentable in view of the Smith reference, United States Patent No. 3,554,987, issued January 12, 1971. The Spada disclosure and the Smith reference both show polymers of the same monomers, in overlapping ratios of components. However, the products that Smith and Spada obtain are described as quite different.

### The Smith Reference

Smith describes water-based latexes containing dispersed particles of polymers made from certain classes and proportions of monomers. The polymers are used in binding agents in photographic gels and films.

In most of Smith's examples three monomers are present, as in Spada's examples. The first monomer in Smith's preferred polymers is an olefinically unsaturated carboxylic acid ester, in at least 50 percent by weight of polymer. In Smith's examples this component is illustrated, inter alia, as 75.7 molar percent butyl acrylate (Example 5), and 72.4 weight percent ethyl acrylate (Example 15).

Smith's second monomer used in preparing his preferred polymers is a polymerizable functional monomer like that described by Spada, present in about 2–20 weight percent of the polymer. Smith's examples include polymers containing 9.4 molar per-

cent of acetoacetoxyethyl acrylate (AAEA) (Example 5), and 3.5 weight percent AAEMA (Example 15). Spada incorporated by reference the entire disclosure of the Smith patent, as showing polymerizable functional monomers suitable and preferred for use in the Spada polymers, and the preparation of these monomers.

The preferred polymers of Smith contain a third monomer, as do Spada's, and most of Smith's examples include acrylic acid. Thus, in Smith's Example 5 the complete polymer composition is 75.7 molar percent butyl acrylate, 9.4 molar percent AAEA, and 14.9 molar percent acrylic acid. In Smith's Example 15 the composition is 72.4 weight percent ethyl acrylate, 3.5 weight percent AAEMA, and 24.1 weight percent acrylic acid.

Smith states that emulsions containing his polymers have improved properties of hardness, resistance to abrasion, good adhesion, and dimensional stability. Smith does not show or suggest that his polymer latexes can form a normally tacky pressure-sensitive adhesive—properties admitted to be different from hardness and abrasion resistance.

### Discussion

The Board affirmed the rejection of Spada's claims under 35 U.S.C. §§ 102, 103, this hybrid rejection having apparently been made on the theory that if the claimed subject matter was novel, i.e. not anticipated, in terms of section 102, then it would have been obvious under section 103.[2] The Commissioner on this appeal concentrates on the rejection for anticipation. The Commissioner argues that a *prima facie* case [3] of anticipation is made by the Smith disclosure of polymers that are apparently identi-

---

2. The court has accepted the PTO's practice of basing rejections on sections 102 or 103 in the alternative, provided that the appellant was fully apprised of all the grounds of rejection. *See, e.g., In re Pearson,* 494 F.2d 1399, 1402 & nn. 2–3, 181 USPQ 641, 644 & nn. 2–3 (CCPA 1974).

3. The *prima facie* case is a procedural tool which, as used in patent examination (as by courts in general), means not only that the evidence of the prior art would reasonably allow the conclusion the examiner seeks, but also that

the prior art compels such a conclusion if the applicant produces no evidence or argument to rebut it. *See Black's Law Dictionary* 1071 (5th Ed.1979). *See generally In re Piasecki,* 745 F.2d 1468, 1472, 223 USPQ 785, 788 (Fed.Cir.1984) (citing cases showing the evolution of the concept in patent examination of *prima facie* obviousness as a legal inference drawn from uncontradicted evidence). Upon rebuttal, the decision is made on the entirety of the record. *Id.*

cal to those of Spada, although the properties described by Smith are different from those that are reported by Spada and included as express limitations in Spada's claims.

Rejection for anticipation or lack of novelty requires, as the first step in the inquiry, that all the elements of the claimed invention be described in a single reference. *Richardson v. Suzuki Motor Co.,* 868 F.2d 1226, 1236, 9 USPQ2d 1913, 1920 (Fed.Cir.), *cert. denied,* — U.S. ——, 110 S.Ct. 154, 107 L.Ed.2d 112 (1989). Further, the reference must describe the applicant's claimed invention sufficiently to have placed a person of ordinary skill in the field of the invention in possession of it. *Akzo N.V. v. United States Int'l Trade Comm'n,* 808 F.2d 1471, 1479, 1 USPQ2d 1241, 1245 (Fed.Cir.1986), *cert. denied,* 482 U.S. 909, 107 S.Ct. 2490, 96 L.Ed.2d 382 (1987); *In re Coker,* 463 F.2d 1344, 1348, 175 USPQ 26, 29 (CCPA 1972).

Spada argues that Smith does not describe Spada's claimed invention, for to find anticipation "all limitations in the claims must be found in the reference since the claims measure the invention." *In re Lange,* 644 F.2d 856, 862, 209 USPQ 288, 293 (CCPA 1981). Spada states that since his compositions are claimed as pressure-sensitive adhesives containing a tacky polymer having a $T_g$ below 0°C, they can not be anticipated. Spada argues that since the Smith products are hard, abrasion-resistant solids, they are *ipso facto* different.

The discovery of a new property or use of a previously known composition, even when that property and use are unobvious from the prior art, can not impart patentability to claims to the known composition.[4] *Titanium Metals Corp. v. Banner,* 778 F.2d 775, 780, 782, 227 USPQ 773, 777–78, 778 (Fed.Cir.1985); *In re Pearson,* 494 F.2d 1399, 1403, 181 USPQ 641, 644 (CCPA 1974); *In re Lemin,* 326 F.2d 437, 440, 140 USPQ 273, 276 (CCPA 1964). Thus, the initial inquiry is to the novelty of

the composition. *Titanium Metals,* 778 F.2d at 780, 227 USPQ at 777.

The Board held that the compositions claimed by Spada "appear to be identical" to those described by Smith. While Spada criticizes the usage of the word "appear", we think that it was reasonable for the PTO to infer that the polymerization by both Smith and Spada of identical monomers, employing the same or similar polymerization techniques, would produce polymers having the identical composition. Products of identical chemical composition can not have mutually exclusive properties. *See In re Papesch,* 315 F.2d 381, 391, 137 USPQ 43, 51 (CCPA 1963) (a chemical compound and its properties are inseparable).

While the art and science of polymer chemistry may be distinguished from that of simpler compounds and compositions, in Spada's case we conclude that the Board correctly found that the virtual identity of monomers and procedures sufficed to support a *prima facie* case of unpatentability of Spada's polymer latexes for lack of novelty. See, e.g., *In re Thorpe,* 777 F.2d 695, 697–98, 227 USPQ 964, 966 (Fed.Cir.1985), wherein the examiner's rejection of product-by-process claims under §§ 102, 103, based on similarity of reactants, reaction conditions, and properties, amounted to a *prima facie* case of unpatentability.

In response to the PTO's asserted *prima facie* case the applicant may argue that the inference of lack of novelty was not properly drawn, for example if the PTO did not correctly apply or understand the subject matter of the reference, or if the PTO drew unwarranted conclusions therefrom. However, when the PTO shows sound basis for believing that the products of the applicant and the prior art are the same, the applicant has the burden of showing that they are not. *In re King,* 801 F.2d 1324, 1327, 231 USPQ 136, 138 (Fed.Cir.1986); *In re Ludtke,* 441 F.2d 660, 664, 169 USPQ 563, 566 (CCPA 1971). Spada offered no such showing.

---

4. All of Spada's claims are composition claims. The issue is not before us of whether Spada may have discovered a new use of a known composition, which use may be patentable as a process.

35 U.S.C. § 101. *See In re Hack,* 44 C.C.P.A. 954, 245 F.2d 246, 248, 114 USPQ 161, 163 (1957).

The Board suggested that Spada provide some scientific explanation for the asserted differences between the properties of his compositions and those described by Smith. While an inventor is not required to understand how or why an invention works, we think that the PTO was correct, in view of the apparent identity of the compositions, in requiring Spada to distinguish[5] his compositions from those of Smith. Although newly discovered properties can be the basis of claims to *novel* polymers, *E.I. Du Pont de Nemours & Co. v. Phillips Petroleum Co.*, 849 F.2d 1430, 1435, 7 USPQ2d 1129, 1133 (Fed.Cir.), *cert. denied*, 488 U.S. 986, 109 S.Ct. 542, 102 L.Ed.2d 572 (1988), Spada did not overcome, with argument or evidence, the apparent chemical identity of his polymers and those of Smith. Spada showed no error, in science or in law, in the Board's holding that the products appeared to be the same and thus that Spada's products were not new.

Spada pointed to his data wherein polymers containing varying amounts of AAE-MA showed greatly increased shear strength without significant loss in tack, compared with polymers without the AAE-MA. We agree with Spada that this result is not suggested in the Smith reference. However, these data did not relate to the fundamental question of the novelty of Spada's compositions in view of those of Smith. Without novelty, evidence of unobviousness is superfluous.

As we observed *supra*, discovery of an unobvious property and use does not overcome the statutory restraint of section 102 when the claimed composition is known. While Spada's position is that his polymers are not anticipated by the polymers of Smith because their properties are different, Spada was reasonably required to show that his polymer compositions are different from those described by Smith. This burden was not met by simply including the assertedly different properties in the claims. When the claimed compositions are not novel they are not rendered patentable by recitation of properties, whether or not these properties are shown or suggested in the prior art.

The Board's decision rejecting all of the claims is

AFFIRMED.

---

**5.** It was discussed at oral argument that the Spada invention may not be "particularly point[ed] out and distinctly claim[ed]", in the words of 35 U.S.C. § 112, paragraph 2. No rejection had been made under section 112. The Solicitor stated that such a rejection was inappropriate because the claims were "not vague". *But see Burlington Indus. v. Quigg*, 822 F.2d 1581, 1583–84, 3 USPQ2d 1436, 1438 (Fed. Cir.1987) (whether claims were too broadly written is not a section 103 determination but an issue of claim imprecision under section 112). *See also In re Muchmore*, 433 F.2d 824, 824–25, 167 USPQ 681, 682 (CCPA 1970) ("there is sometimes a close relationship between indefiniteness under § 112, second paragraph, and obviousness under § 103").