**Application of Gerhard FESSMANN.**
**Patent Appeal No. 9121.**

United States Court of Customs and Patent Appeals.
Jan. 10, 1974.

Edward W. Goldstein, Washington, D. C., attorney of record, for appellant.

Joseph F. Nakamura, Washington, D. C., for Commissioner of Patents, Jack E. Armore, Washington, D. C., of counsel.

Before MARKEY, Chief Judge, RICH, LANE and MILLER, Judges, and ALMOND, Senior Judge.

ALMOND, Senior Judge.

This is an appeal from the decision of the Patent Office Board of Appeals affirming the examiner's rejection, under 35 U.S.C. § 103, of claim 1 in appellant's application[1] entitled "Liquid Smoke." We affirm.

## The Invention

The invention relates to a liquid composition used for imparting a smoked flavor to foodstuffs such as meat, sausage and cheese. The composition is obtained by treating sawdust with superheated steam. The precise nature of the invention and the method for making it will be more apparent from a consideration of claim 1, reproduced below, since the claim is in the product-by-process format.

1. A liquid smoke product comprising at least a portion of the material resulting from a process of:

(a) contacting particulate wood solids with superheated steam having a temperature of at least 180°C. to effect a thermal decomposition of said wood solids to form a smoking fluid;

(b) withdrawing the smoking fluid from the wood solids; and

(c) liquifying the smoking fluid to *produce said liquid smoke product* which may be stored and subsequently applied in the treatment of foodstuffs.

Other than the process by which it is made, the only characterization of the composition which appears in the specification is that it has a low content of carcinogens. In particular, it contains 0.2–0.3 micrograms of 3,4-benzopyrene per liter. The record makes it clear that prior art "liquid smoke" compositions are complex mixtures of the chemical compounds which can be derived from wood. These mixtures defy simple characterization and this fact presumably accounts for the use of a product-by-process claim.

## Rejection

The examiner rejected claim 1 as being obvious within the meaning of § 103 in view of each of the following give patents:

| | | | |
|---|---|---|---|
| Chase | 511,288 | Dec. | 19, 1893 |
| Guinot | 2,454,649 | Nov. | 23, 1948 |
| Hollenbeck | 3,106,473 | Oct. | 8, 1963 |
| Taylor | 3,152,914 | Oct. | 13, 1964 |
| Miler et al. (Miler) | 3,445,248 | May | 20, 1969 |
| | | (Filed Apr. | 7, 1965) |

All of these references are directed to liquid smoke compositions and/or their method of preparation. However, none of these is obtained by treating sawdust with superheated steam. For the purposes of our decision, it will suffice to discuss but two of these references, Hollenbeck and Miler, which in our view are the most pertinent.

Hollenbeck discloses that it was known to the prior art that a liquid smoke composition could be obtained from wood. In these processes the smoke can be generated by burning wood in a limited amount of air or by destructively distilling wood. The resulting product can be condensed to a liquid or dissolved in water to make the liquid smoke. Hollenbeck prefers to use the method in which the wood is burned since this produces lesser amounts of phenolic and hydrocarbon compounds. Although some phenolics are desired, if their content is too high a bad taste is imparted to the foodstuff. Among the hydrocarbons produced is 3,4-benzopyrene.

Hollenbeck obtains his product by the countercurrent extraction of the smoke using water as the extractant. The extract is condensed and filtered with cellulose pulp to remove the 3,4-benzo-

---

[1]. S.N. 850,980 filed August 18, 1969 as a continuation-in-part of S.N. 515,126 filed December 20, 1965 and now U.S. Patent No. 3,462,282.

pyrene. This results in a content of 3,4-benzopyrene of less than 0.5 parts per billion.

Miler also generates the smoke by burning wood. However, an excess of air rather than limited air is used in the combustion. The smoke is absorbed into an aqueous alkali solution. Miler teaches that carcinogenic compounds such as 3,4-benzopyrene can be removed from the alkali solution by extraction with ethyl ether.

In the examiner's view, appellant failed to show that the liquid smoke obtained by his process possessed unobvious differences from the liquid smoke compositions shown in the prior art. The board agreed, reasoning as follows:

In the present case, we have searched in vain in appellant's brief for some explicit assertion of unobviously novel properties or characteristics exhibited by his liquid smoke product. However, all that we find is a comparison of his process with the prior art processes. A comparison of that nature does not serve to resolve the issue concerning the patentability of the product. Even a review of appellant's specification is of little assistance to appellant's cause. The specification emphasizes the low 3,4 benzopyrene content of appellant's product * * * but this is not a novel characteristic of a liquid smoke product as evidenced by the Hollenbeck patent * * * and the Miler et al. patent * * *.

Appellant requested reconsideration by the board of its decision. In his request he offered new evidence which was alleged to show that his liquid smoke differed in kind from that known to the prior art and that this difference grows out of his unobvious process.[2] He also offered to provide additional evidence if given time. The board refused to consider the new evidence for the reason that, in its view, the evidence was not timely presented.

## OPINION

This court recently made the following observation, in In re Brown, 459 F.2d 531, 59 CCPA 1036 (1972), regarding the patentability of product-by-process claims:

* * * the lack of physical description in a product-by-process claim makes determination of the patentability of the claim more difficult, since in spite of the fact that the claim may recite only process limitations, it is the patentability of the *product* claimed and *not* of the recited process steps which must be established. We are therefore of the opinion that when the prior art discloses a product which reasonably appears to be either identical with or only slightly different than a product claimed in a product-by-process claim, a rejection based alternatively on either section 102 or section 103 of the statute is eminently fair and acceptable. As a practical matter, the Patent Office is not equipped to manufacture products by the myriad of processes put before it and then obtain prior art products and make physical comparisons therewith. [Emphasis in the original.]

In *Brown,* the court was in effect saying that the Patent Office bears a lesser burden of proof in making out a case of prima facie obviousness for product-by-process claims because of their peculiar nature than would be the case when a product is claimed in the more conventional fashion. We believe the Patent Office satisfied its burden of proof in this case in view of Hollenbeck and Miler.

As the board noted, there is nothing in appellant's specification which suggests that his liquid smoke differs from the prior art compositions other than by its low content of carcinogens. However, Hollenbeck and Miler describe compositions having little or no carcinogen content. Hollenbeck does teach that the method of manufacture can affect the

---

**2.** Appellant's patent, U.S. 3,462,282, contains claims directed to a process for obtaining liquid smoke using superheated steam. This patent issued on an application of which the application involved in this appeal is a continuation-in-part.

makeup of a liquid smoke composition. However, there is nothing in the record before the examiner from which he could reasonably have been expected to conclude that appellant's composition differs in kind from those obtained by other inventors solely because it was derived from a process not known to the prior art.

Accordingly, we think the board acted properly when it affirmed the examiner as the burden of proof had shifted to the appellant and this burden was not discharged. It was appellant's duty to present evidence which would demonstrate the unobvious character of his claimed invention over the cited references. No such evidence was offered prior to the reaching by the board of its decision and we think the board was within its authority when it rejected the belated offer of evidence made in appellant's request for reconsideration. The board had made no new rejection and appellant was clearly on notice that the examiner was not persuaded that the composition was unobvious simply because its process of manufacture had been deemed patentable.

For the foregoing reasons, the decision of the board is affirmed.

Affirmed.