846 F.2d 77
 Unpublished Disposition
NOTICE: Federal Circuit Local Rule 47.8(b) states that opinions and orders which are designated as not citable as precedent shall not be employed or cited as precedent. This does not preclude assertion of issues of claim preclusion, issue preclusion, judicial estoppel, law of the case or the like based on a decision of the Court rendered in a nonprecedential opinion or order.
In re ALLEN.
 No. 87-1393.
 United States Court of Appeals, Federal Circuit.
 March 14, 1988.
 
 Before MARKEY, Chief Judge, and FRIEDMAN and ARCHER, Circuit Judges.
 FRIEDMAN, Circuit Judge.
 
 DECISION
 
 1
 The decision of the Board of Patent Appeals and Interferences rejecting four claims of a patent application for a type of oyster, Ex parte Allen, 2 USPQ2d 1425 (1987), is affirmed.
 
 OPINION
 
 2
 * Oysters reproduce by discharging their gametes (sperm or eggs) into the water, where the eggs are fertilized (at which time they are called "zygotes"). The zygotes develop into larvae and then grow to become oysters.
 
 
 3
 Two of the most important species of edible oysters in the United States are the Atlantic (or American) oyster found generally in the Atlantic Ocean and the Pacific oyster (Crassostrea gigas ) found in the cooler waters of the Pacific Ocean. The main difference between the two species is the percentage of body weight that is involved in producing gametes during the breeding season. The Atlantic oyster devotes up to 40 percent of its body weight to gamete production; the Pacific oyster expends up to twice that amount. The Atlantic oyster is edible throughout the year whereas the Pacific oyster is soft and unsuitable for human consumption during its reproductive phase.
 
 
 4
 The appellants' application discloses (1) a method of producing sterile Pacific oysters, which are edible year round, by inducing polyploidy in the oysters, and (2) the oysters produced by that method. Most cells are "diploid" or have two sets of chromosomes. "Polyploid" cells have three or more sets of chromosomes. Appellants induce polyploidy by fertilizing oyster eggs under controlled temperatures and applying hydrostatic pressure to the zygotes. The zygotes are then cultivated using known techniques until they develop into adult oysters. The claimed process is used only on Pacific oysters. The product claims, 8 and 12 and dependent claims 13 and 14, cover polyploid Pacific oysters produced by the process.
 
 
 5
 The examiner allowed the process claims but rejected the product claims as not disclosing patentable subject matter under 35 U.S.C. Sec. 101 (1982) and as obvious under 35 U.S.C. Sec. 103 (1982). The Board reversed the section 101 rejection because "the Supreme Court made it clear in its decision in Diamond v. Chakrabarty, [447 U.S. 303 (1980) ], that Section 101 includes man-made life forms." 2 USPQ2d at 1426. The Board affirmed the section 103 rejection in light of a prior art publication by Stanley et al., which discloses a method of chemically inducing polyploidy in more than half of the Atlantic oysters so treated. The Board stated:
 
 
 6
 Stanley et al. recommend the induction of polyploidy in oysters as a way to increase growth as follows: "We have shown a clear growth advantage in triploid American oysters produced by blocking the first meiosis division. We recommend induction of polyploidy as a way to increase growth in cultured oysters."
 
 
 7
 2 USPQ2d at 1427. The Board concluded that
 
 
 8
 in view of the express recommendation by Stanley et al., experts in the art who have successfully induced polyploidy in one species of oysters, it would have been obvious to one of ordinary skill in the art to induce polyploidy in Pacific Crassostrea gigas oysters.
 
 
 9
 ....
 
 
 10
 Appellants' argument that the claimed polyploid c. gigas oysters are unobvious because they are sterile and do not devote significant portions of their body weight to reproduction, thereby remaining edible year around, is not persuasive. It was known in the art that polyploids exhibit sterility. See, e.g., Stanley et al. page 147. Thus, it is not unexpected that sterile, polyploid c. gigas oysters do not devote significant portions of their body weight to reproductive gamete formation.
 
 
 11
 Id. at 1427-28.
 
 II
 
 12
 The appellants contend (A) that the Board erred in concluding that a prima facie case of obviousness had been established and, (B) that if a prima facie case was established, the Board applied an improper standard in reviewing and rejecting the appellants' rebuttal evidence.
 
 
 13
 A. The burden initially is upon the Patent Office to show prima facie obviousness. See, e.g., In re Piasecki, 745 F.2d 1468, 1471-72, 223 USPQ 785, 788 (Fed.Cir.1984). The appellants challenge the Board's ruling that the polyploid Pacific oysters produced by their process would have been obvious. Whether a product defined as made by a process would have been prima facie obvious is determined without regard to the process that produced it.
 
 
 14
 If the product in a product-by-process claim is the same as or obvious from a product of the prior art, the claim is unpatentable even though the prior product was made by a different process.
 
 
 15
 In re Thorpe, 777 F.2d 695, 697, 227 USPQ 964, 966 (Fed.Cir.1985). To overcome an obviousness rejection, therefore, the appellants' polyploid Pacific oyster must be different from, and unobvious in light of, a polyploid Atlantic oyster made by the Stanley process.
 
 
 16
 As the Board noted, Stanley successfully produced polyploid Atlantic oysters and " 'recommend[ed] induction of polyploidy as a way to increase growth in cultured oysters.' " 2 USPQ2d at 1427 (quoting Stanley et al.). It was known that polyploid oysters were sterile. Id. at 1428. It therefore would have been obvious that polyploid (and therefore sterile) Pacific oysters would have "increase[d] growth" by not devoting substantial portions of their body weight to reproduction. The Patent Office established prima facie obviousness.
 
 
 17
 The appellants assert, however, that prima facie obviousness was not shown because in determining that question for life forms the inherent unpredictability of biological systems has to be considered. The appellants cite In re Grabiak, 769 F.2d 729, 226 USPQ 870 (Fed.Cir.1985) and Ex parte Old, 229 USPQ 196 (Bd.Pat.App. & Interferences 1985). Grabiak held that although a chemical homologue may be prima facie obvious, in that case it was not obvious because, at least in part, of the unpredictable activity of chemical substitutions. Old held that although the method there involved would have been obvious, the results it produced were unpredictable. "[The] technology is an empirical art in which the routineer is unable to foresee what ... will be produced.... Only by actually carrying out the requisite steps can the nature of the ... [product] be determined and ascertained; no 'expected' results can thus be said to be present." Old, 229 USPQ at 200.
 
 
 18
 The Grabiak court acknowledged the unpredictable properties that chemical substitution produces. Here, however, polyploid oysters have very predictable properties: they are sterile and, therefore, larger. Old, while not binding precedent, notes that until the process was performed, the properties of the resultant product were unknown and therefore would not be obvious. A polyploid oyster produced by any process has known properties and is prima facie obvious.
 
 
 19
 B. Once a prima facie case is established, the burden shifts to the applicant to rebut the prima facie case "with objective evidence of unobviousness." In re Rinehart, 531 F.2d 1048, 1051, 189 USPQ 143, 147 (CCPA 1976). The appellants argue that the declaration of co-inventor Allen carried that burden.
 
 
 20
 The Allen declaration states that the Stanley techniques are not effective in producing polyploidy in the Pacific oyster, which it asserts has distinctly different characteristics from the Atlantic oyster. Allen describes the applicants' experiments and uses general terms to describe the results (e.g., "near total mortality," "extremely low yields," "very low survival rates"). The declaration concludes that "extensive experimentation with all possible variables would be required in order to develop a process that would work with C. gigas."
 
 
 21
 The Board considered the Allen declaration and "agree[d] with the Examiner that the Allen declaration is not persuasive of nonobviousness." 2 USPQ2d at 1427-28. The Board noted that the Allen declaration contained "mere conclusory statements ... entitled to little weight when the Patent and Trademark Office questions the efficacy of the statements." 2 USPQ2d at 1428. The fact that the Stanley process may require "extensive experimentation ... in order to develop a process that would work with [Pacific oysters]" does not render polyploid Pacific oysters themselves unobvious. To state that the Pacific oyster is genetically and phenotypically distinct from the Atlantic oyster does not rebut the prima facie case. Both are a species of oyster which are sterile and, therefore, larger when polyploid. The Board found that the Allen declaration did not rebut the prima facie obviousness determination. We have no reason to disagree with that conclusion.