**In re Hans O. CEDERBLAD and Jan D. Seppala**

No. 00–1336.

United States Court of Appeals, Federal Circuit.

Feb. 9, 2001.

Before CLEVENGER, SCHALL, and BRYSON, Circuit Judges.

BRYSON, Circuit Judge.

Hans O. Cederblad and Jan Seppala (collectively "Cederblad") appeal from the decision of the United States Patent and Trademark Office's Board of Patent Appeals and Interferences sustaining a final rejection of six claims of Cederblad's patent application No. 08/295,635. We *affirm in part, vacate in part, and remand.*

I

Cederblad's application claims an extruded plastic netting having unidirectional elasticity. The netting is formed in a grid

with one set of strands running longitudinally and another set of strands running perpendicularly to the longitudinal strands. The longitudinal strands are formed from a material with different elasticity than the material of the transverse strands, thus permitting the netting to stretch more in one direction than in the other.

Cederblad's application included 25 claims. The examiner rejected all 25 under a variety of references. The Board reversed all of the examiner's rejections except those for claims 1, 3, 4, 6, 11 and 13, which stand rejected under 35 U.S.C. § 102(b) as anticipated by U.S. Patent No. 4,636,419 issued to Madsen ("Madsen"). The Board specifically addressed the application of Madsen to independent claim 1 and then held that dependent claims 3, 4, 6, 11, and 13 stood together with independent claim 1 as a group, thus obviating the need to address the dependent claims individually. Cederblad challenges the rejection of claim 1 as well as the grouping of claims 1, 3, 4, 6, 11, and 13.

The rejected claims recite:

1. A bicomponent elastomeric extruded netting having unidirectional elasticity, said bicomponent elastomeric extruded netting comprising extruded strands consisting essentially of a relatively inelastic resin component and transverse extruded strands consisting essentially of a relatively elastic resin component.

3. The netting of claim 1 wherein the elastic strands are of a styrenic block copolymer composition.

4. The netting of claim 2 wherein the strands of the polyolefin resin extend in the machine direction and the strands of the elastic resin extend in the transverse direction.

6. The netting of claim 3 wherein the elastic resin is a styrene-butadiene-styrene resin.

11. The netting of claim 1 wherein the strands of the elastic resin extend in the machine direction and the strands of the inelastic resin extend in the transverse direction.

13. The netting of claim 11 wherein the elastic resin is a styrene butadienestyrene resin.

Madsen discloses two processes for creating extruded plastic netting. In the first process (film formation), a film sheet is extruded and then converted into netting with additional processes such as stretching, slitting, or fibrillating the film. In the second process (fiber formation), the strands of the net are formed directly at the output of the extrusion with the crosspoints of the netting being created by the extrusion process. Madsen uses a variation of the film formation process in its described and claimed embodiments. The Cederblad application describes a fiber formation process.

The examiner rejected the appealed claims as being anticipated by Madsen. The examiner stated that Madsen discloses a netting comprising a matrix in which filaments are embedded within the matrix so that the matrix stretches in only one direction. Figure 10 from Madsen is depicted below.

FIG. 10

The examiner stated that Madsen discloses that the materials making up filaments A are different from the materials of B and B1. For example, Madsen recites that A can be made of inelastic materials such as polyamide and B can be made of elastic materials such as polystyrene-butadiene block copolymers. *See* Madsen, col. 2, II. 20–26; col. 10, II. 4–5. The Board upheld the examiner's rejection based on Madsen.

## II

Because anticipation is a question of fact, *see In re Schreiber*, 128 F.3d 1473, 1477, 44 USPQ2d 1429, 1431 (Fed. Cir.1997), we must uphold the Board's decision if there is substantial evidence in the record to support it, *see Dickinson v. Zurko*, 527 U.S. 150, 119 S.Ct. 1816, 144 L.Ed.2d 143, 50 USPQ2d 1930 (1999); *In re Gartside*, 203 F.3d 1305, 1315, 53 USPQ2d 1769, 1775 (Fed.Cir.2000). Moreover, during examination proceedings, claims are given their broadest reasonable interpretation consistent with the specification. *See In re Graves*, 69 F.3d 1147, 1152, 36 USPQ2d 1697, 1701 (Fed.Cir. 1995); *In re Etter*, 756 F.2d 852, 858, 225 USPQ 1, 5 (Fed.Cir.1985) (en banc). That approach "serves the public interest by reducing the possibility that claims, finally allowed, will be given broader scope than is justified," *In re Yamamoto*, 740 F.2d 1569, 1571, 222 USPQ 934, 936 (Fed.Cir. 1984), and it is not unfair to applicants, because "before a patent is granted the claims are readily amended as part of the examination process," *Burlington Indus., Inc. v. Quigg*, 822 F.2d 1581, 1583, 3 USPQ2d 1436, 1438 (Fed.Cir.1987).

On appeal, Cederblad makes three basic assertions: (1) that its process (using fiber formation) differs from and has inherent advantages over Madsen's film formation process; (2) that it discloses a net with well-bonded crosspoint joints, which Madsen does not show; and (3) that Madsen's process cannot produce two sets of strands with different compositions since Madsen's "filaments" are not extruded strands. None of these assertions justifies reversal of the Board's decision.

Cederblad's reliance on the different process used by Madsen is unavailing because all of the rejected claims are product claims, not process or product-by-process claims. Nor does Cederblad's recitation of the process's advantages save these claims. "The method of manufacture, even when cited as advantageous, does not of itself convert product claims into claims limited to a particular process." *Vanguard Prods. Corp. v. Parker Hannifin Corp.*, 234 F.3d 1370, 1372, 57 USPQ2d 1087, 1089–90 (Fed.Cir.2000); *In re Thorpe*, 777 F.2d 695, 697, 227 USPQ 964, 966 (Fed.Cir. 1985) ("I the product in a product-by-process claim is the same as or obvious from a product of the prior art, the claim is unpatentable even though the prior product was made by a different process.").

Even if, as Cederblad contends, one construes the claim terms "extruded strands" as reciting a process limitation (thus creating a product-by-process claim), the process would be "extrusion," which is still anticipated by Madsen. Madsen describes its process as "a combination of side-by-side extrusion of streams," *see* Madsen, col. 2, II. 12–15, and repeatedly describes its process as extrusion, *see, e.g.,* col. 4, II. 20–26; col. 5, II. 35–40; col. 5, II. 58–60; col. 6, II. 39–44. Cederblad's application agrees with this characterization, noting that Madsen "employs a combination of side by side extrusion stream."

Nothing in Cederblad's application limits the meaning of the term "extrusion," as used in the disputed claims, in a way that avoids Madsen's process. In the Summary of the Invention section of the application, Cederblad states that "the present invention may be produced by an extrusion die fed by two separate polymer streams." The term "may" does not exclude other types of processes. In addition, Cederblad's description of "an extrusion die fed by two separate polymer streams" would seem to correspond to Madsen's "combination of side by side extrusion streams." The remainder of Cederblad's written description speaks broadly of preferred embodiments and does not indicate that the claimed invention is limited to the preferred process.

Cederblad's argument that the characteristics of its crosspoint joints distinguish the application over Madsen also fails. We note initially that Cederblad's claims make no mention of the strand crosspoints or their characteristics. The Board examined Cederblad's specification and determined that the crosspoints inherently were bonded and needed to show "good joint bond strength." The Board found, however, that Madsen meets this inherent limitation, and substantial evidence supports that finding. First, Figures 10 and 11 from Madsen show crosspoint connections in an almost identical format as shown by Figure 3 of Cederblad. Second, Madsen discloses a preferred embodiment in which the filaments are in a "slipping" relationship with the matrix material. *See* Madsen, col. 2, II. 43–51. The Board held that by expressing a preference for a slipping relationship, Madsen also disclosed a non-slipping, or bonded, relationship. The Board permissibly found that the reference to the embodiment with a "slipping relationship" as preferred inherently suggests an embodiment with a non-slipping or bonded relationship.

In its briefs to the Board and to this court, Cederblad argues that its crosspoint joints are functionally distinguishable from the joints disclosed by Madsen because they "minimize the spread of a unidirectional force along one set of strands into the netting's perpendicular strands." Because there is no reference to that function in the Cederblad application, however, the argument regarding functionality is not a sufficient basis on which to distinguish Madsen.

Cederblad's third argument, that Madsen's filaments are not strands, is also defeated by the breadth of Cederblad's claims and specification. Cederblad states that his "non-elastic strand material may be any extrudable material such as the various nylons, polyesters, polyethylenes." Col. 5, II. 32–33. Madsen's specification describes the filaments as being made of a polymer matter including Nylon 6 or Nylon 66. *See* Madsen, col. 3, II. 15–20. Such matter is then described as being produced in an extrusion stream. *See* Madsen, col. 4, II. 3–30. Given that Madsen's filaments are a material specifically mentioned by Cederblad and that Madsen describes the filaments as being produced in extrusion streams, Cederblad's argu-

ment regarding the asserted difference between filaments and strands is unavailing.

Even though Madsen's filaments are encompassed by a secondary material (material B in Figure 10 above), they still anticipate Cederblad's claims. Cederblad uses the partially open term "consisting essentially of" to describe the resin components. Since the filaments may provide the necessary inelastic properties of the inelastic strands, the additional encompassing material does not render Madsen non-anticipating. *See PPG Indus. v. Guardian Indus. Corp.*, 156 F.3d 1351, 1355, 48 USPQ2d 1351, 1353–54 (Fed.Cir.1998) ("By using the term 'consisting essentially of' the drafter signals that the invention necessarily includes the listed ingredients and is open to unlisted ingredients that do not materially affect the basic and novel properties of the invention.")

Finally, Cederblad argues that Madsen "teaches away" from using Cederblad's preferred process. Madsen does indeed describe drawbacks of that process. *See* Madsen, col. 1, II. 19–24. For purposes of anticipation, however, such comments are irrelevant. *See Celeritas Techs., Ltd. v. Rockwell Int'l. Corp.*, 150 F.3d 1354, 1361, 47 USPQ2d 1516, 1522 (Fed.Cir.1998) ("[T]he question whether a reference 'teaches away' from the invention is inapplicable to an anticipation analysis.").

In sum, we conclude that substantial evidence supports the Board's finding that Madsen anticipates claim 1 of Cederblad's application.

### III

■ The Board did not separately address the patentability of claims 3, 4, 6, 11 and 13 because the Board concluded that Cederblad had not argued the patentability of those claims separately from claim 1. To the contrary, Cederblad argued that for purposes of the appeal claims 3, 4, 6, and 13 should be grouped separately from claims 1 and 11, and that claims 3, 4, 6, and 13 are separately patentable from claims 1 and 11 in that they "define specific materials and combination not shown or suggested in the art for strand extrusion net." The examiner acknowledged Cederblad's argument that claims 3, 4, 6, and 13 did not stand or fall with claims 1 and 11 and did not challenge that contention, although the examiner argued on the merits that Madsen anticipated all six of the disputed claims. We conclude that Cederblad's argument as to the separate patentability of those claims, although very brief, was adequate to notify the Board that Cederblad was arguing the patentability of those claims separately from the patentability of claims 1 and 11, and that the Board erred when it treated the patentability of claims 3, 4, 6, and 13 as governed by its decision as to claims 1 and 11 without any additional analysis. Since the Board made no findings as to claims 3, 4, 6, and 13, we remand for further proceedings with respect to those claims.